OPINION OF THE COURT
Richard L. Price, J.
This CPLR article 78 proceeding seeks a judgment vacating the determination of respondent which denied the Church of Scientology a real estate tax exemption for certain property owned by the church.
It has been said that “One religion is as true as another”,* but this statement begs the question: “What is a religion?”
The Church of Scientology was founded more than 20 years ago by L. Ron Hubbard. Church doctrine apparently includes a concept of a supreme being (Theta). An integral part of the work of the church is a process known as *721 auditing. In auditing, a church member is attached to an electronic device, known as an “E-meter”, which is similar to the skin galvanometer used in lie detector tests. The subject is asked to discuss the most disturbing aspects of his life and past experiences, and his stress reactions are recorded. Auditing is purported to be a form of “therapy” in which the subject is able to come to terms with life. Followers often pay the church thousands of dollars during the auditing process. The church also publishes books and/or manuals which set forth rituals for weddings, funerals and the like.
The Church of Scientology has been involved in extensive litigation, through the world, in which its status as a religion has been in issue. Decisions in various jurisdictions have gone both ways. However, none of those decisions have a res judicata or collateral estoppel effect in the instant proceeding (the various church chapters may differ in their operations, the contents of the various cases have been different, and the New York City Tax Commission was not a party to those cases which were determined in petitioner’s favor).
In June, 1978, the Tax Commission held a hearing regarding the claim for the tax exemption. The Reverend Ron Haugen, president of the church, was the only witness.
In January, 1983, after several years of investigations and procedures, the Tax Commission issued a decision denying a tax exemption. The decision stated the following:
(1) Scientology is not a religion whose tenets, doctrines and policies are generally known.
(2) Reverend Haugen, at the hearing, testified that 31% of the weekly donations were used to pay salaries and benefits, but in a letter submitted after the hearing drastically reduced the estimate to 17%. From this, the Tax Commission concludes that the church is operated for profit.
(3) The organization is a self-help group which emphasizes the mental well-being of its members through a philosophy known as Dianetics.
The pursuit of a particular approach to life is not a purpose giving rise to a tax exemption. Thus, respondent *722 erred in stating that “The courts have regarded a particular approach to life as a religious approach if the practice of the approach holds the same position and force in its followers’ lives as a traditional religion holds in the lives of its followers”.
(4) The church permits people to be Scientologists without abandoning their Jewish, Christian or other beliefs.
(5) L. Ron Hubbard, the church founder, was quoted in the St. Petersburg Times, December 17, 1979, as stating that a man who wanted to make a million dollars ought to start his own religion.
(6) L. Ron Hubbard’s son has commenced litigation to recover assets on the father’s behalf.
Petitioner maintains that Reverend Haugen’s testimony regarding the payment of salaries to church officials was not contradictory, in that salaries varied in particular years (from as little as 17% to as much as 31% of church revenues) depending on the success of the church. Petitioner further contends that the statement attributed to L. Ron Hubbard in the St. Petersburg Times article was actually made years before by writer George Orwell.
Respondent’s papers submitted in opposition to this petition contain many statements and exhibits which were neither considered at the hearing nor mentioned in the decision. Specifically, newspaper accounts indicate that the church employs aggressive marketing tactics, recruits persons as (in effect) sales agents with promises of huge profits or commission and has punished followers who have failed to meet their sales' quotas. The articles further charge that the church has used terror tactics against followers who wish to leave the church or outsiders who dare to oppose the church. Errant church members are allegedly threatened with public disclosure of highly confidential matter obtained during the auditing process. It has also been alleged that the church has brought baseless defamation suits in order to wear down and silence critics of the organization.
There is nothing in the Constitution which requires the taxing authority to grant exemptions to any organization. *723 However, once the government chooses to grant such exemptions, it must do so in a manner which is not discriminatory, arbitrary or capricious.
In determining whether or not to grant an exemption, the taxing authority cannot inquire into the soundness or validity of the dogma espoused by the group (Matter of Holy Spirit Assn. v Tax Comm., 55 NY2d 512). The successful definition of a religion is a very difficult task. However, Judge Adams, writing a concurring opinion in Malnak v Yogi (592 F2d 197) set down some guidelines. Religion is said (p 208) to be the “ ‘sum and essence of one’s basic attitudes to the fundamental problems of human existence.’” Religious organizations generally combine theories into a comprehensive system of beliefs. In addition, there are generally a clergy, formal services and ceremonial functions. None of these standards, of course, are absolute or inflexible.
In order to be entitled to a tax exemption a religious organization must meet three tests: (1) the group must be organized for religious purposes; (2) the property must be used primarily in furtherance of that purpose; and (3) no pecuniary benefit may inure to the benefit of any of its officers, members or employees, nor may it be used as a guise for profit-making operations. (Gospel Volunteers v Village of Speculator, 33 AD2d 407, affd 29 NY2d 622.) Where the primary purpose is a religious one, incidental use of the property for a nonexempt purpose will not destroy the exemption. The mere fact that an organization makes a profit from its operations does not make it a commercial enterprise so long as all profits are devoted to the permitted purpose (Gospel Volunteers v Village of Speculator, supra).
In the instant case, after only a brief hearing, respondent concluded that the Church of Scientology was not a bona fide religion entitled to tax exemptions. However, respondent failed to articulate the standards for distinguishing those organizations which are bona fide religious groups from those that are not or to state the manner in which petitioner failed to meet those tests.
The statement that Scientology is not a religion whose tenets and beliefs are “generally known” is meaningless. *724 The mere fact that the system of beliefs differs from those of more established or traditional religions is not a reason for denial of tax exemptions. To permit the Tax Commission to evaluate the beliefs themselves would be to set a dangerous precedent. A taxing authority with unlimited power could arbitrarily deny tax exemptions to Protestants, Catholics or Jews, or deny an exemption to a new group merely because it fails to fit within the traditional Judeo-Christian mold. The First Amendment is designed to prevent such a result.
The Tax Commission considered the apparent inconsistency of Reverend Haugen, in setting forth financial figures, to be significant. However, respondent did not set forth any objective standards as to how high a percentage of revenues devoted to salaries can be before it is considered excessive. A struggling Jewish or Protestant congregation, for example, may have to pay much of its meager earnings to a rabbi or minister and still be a bona fide religious group.
The mere fact that Scientology permits members to continue as Jews or Christians does not destroy its character as a religion. Nothing requires a religion to exclude all other religions or belief systems. Hindus and Buddists, for example, borrow greatly from other religions. Jews and Christians have learned much from each other and share the Old Testament as a common heritage.
The respondent referred to Hubbard’s alleged description of religion as a road to huge profits (St. Petersburg Times) but did not describe the context in which the statement was made (it has not been shown that Hubbard was referring to his own church).
The mere fact that L. Ron Hubbard’s son is engaged in litigation involving the father’s finances does not mean that the church is run for profit or that the Hubbards have misused church funds.
The Tax Commission gave considerable weight to newspaper articles and other items outside the record in an effort to demonstrate that Scientology is not a bona fide religion. The matters contained in these articles may well be relevant, but the respondent’s determination must be based, at least in part, on direct testimony. Assuming, *725 arguendo, that the charges contained in the articles are true, there are at least two ways in which Scientology can be distinguished from bona fide religious groups. First, a bona fide religious organization does not use coercion. Members who wish to leave the church are not subject to blackmail (the alleged disclosure of confidential matter obtained during the auditing process may well violate the clergyman-penitent privilege). A bona fide church does not threaten its opponents with baseless defamation suits, financial reprisals or physical violence. Second, a bona fide church is not run in the same manner as a high pressure sales organization. Employees are not recruited through promises of huge profits and commissions and are not threatened with punishment for failure to meet “sales quota”. These and other allegations related to the operation of the church should be explored at a new hearing.
Accordingly, the petition is granted to the extent that the case is remanded to the Tax Commission for a rehearing, based at least in part upon direct testimony, regarding the character of the Church of Scientology. Respondent shall consider the alleged profit-making character of the church and the alleged use of coercion, and any other matter which, in the opinion of the respondent, is relevant to the tax exemption question. The Tax Commission, in its decision, shall set forth the objective tests used to determine whether or not the Church of Scientology is a bona fide religion and shall determine either that the church meets those standards or shall set forth the manner in which the church has failed to meet the standards.

Robert Burton, Anatomy of Melancholy.